**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3021-18T2

ELENA DANETZ-GOLD,

      Plaintiff-Respondent,

v.

BOARD OF EDUCATION
OF ENGLEWOOD CLIFFS,
BERGEN COUNTY,

      Defendant-Appellant.

_____

      Argued telephonically August 10, 2020 –
      Decided August 21, 2020

      Before Judges Moynihan and Mawla.

      On appeal from the Superior Court of New Jersey,
      Chancery Division, Bergen County, Docket No. C-
      000002-18.

      Stephen R. Fogarty argued the cause for appellant
      (Fogarty & Hara, attorneys; Stephen R. Fogarty, of
      counsel and on the briefs; Amy E. Canning and David
      J. Ulric, on the briefs).

      Raymond M. Baldino argued the cause for respondent
      (Zazzali Fagella Nowak Kleinbaum & Friedman, PC,

attorneys; Richard A. Friedman, Kathleen Naprstek Cerisano, and Raymond M. Baldino, of counsel and on the brief).

PER CURIAM

Defendant Board of Education of Englewood Cliffs appeals from a February 28, 2018 order granting plaintiff Elena Danetz-Gold summary judgment, finding she was entitled to health insurance benefits and denying defendant's cross-motion for summary judgment. We affirm substantially for the reasons set forth in Judge James J. DeLuca's thorough and well-written decision.

Defendant employed plaintiff as a speech therapist beginning in 2003, and she became tenured in 2006. She took a leave of absence during the 2007-08 and 2008-09 school years and returned from leave in September 2009 at a reduced rate of full-time employment working twenty-one hours per week. Defendant and the Englewood Cliffs Education Association (Association), which represented the school district certificated members, including plaintiff, were parties to an agreement governing, among other matters, leave and health benefits. Specifically, an agreement was in effect for the period of July 1, 2013 through June 30, 2016, and a second agreement governed the period of July 1, 2016 through June 30, 2019.

A-3021-18T2

Pursuant to the agreement, defendant participated in the School Employees Health Benefits Program (SEHBP). Article 22 of the agreement addressed leaves of absences and stated:

> C. Maternity Leave—All pregnant teachers may apply for a leave of absence beginning in the school year during which the child will be born plus up to one . . . additional year, both without pay . . . .
>
> . . . .
>
> 2. A teacher's return date to employment shall be extended for a reasonable period of time at her request for reasons associated with pregnancy, birth or other related cause.
>
> . . . .
>
> E. . . . A teacher shall not receive increment credit for time spent on a leave granted pursuant to Section[] . . . C . . . of this Article. All benefits to which a teacher was entitled at the time his leave of absence commenced . . . shall be restored to him upon his return.

Plaintiff was enrolled in the SEHBP until 2007 when she waived coverage and accepted an opt-out waiver payment in lieu of coverage because she received coverage through her husband's insurance. She received opt-out waiver payments for the school years between September 2009 and September 2013. She did not receive the payments for the 2013-14 school year because she was on unpaid leave.

A-3021-18T2

Plaintiff's leave was approved at an October 2012 meeting, wherein defendant passed a resolution granting her maternity and contractual child-rearing leave for the second half of the 2012-13 and the entire 2013-14 school years "with an anticipated return to full-time employment . . . on September 1, 2014." As contemplated, plaintiff returned to work in September 2014. After her return, she continued to receive the opt-out waiver payment from the 2014-15 through 2016-17 school years.

In April 2017, plaintiff contacted defendant's business administrator to inquire regarding enrollment for benefits under the SEHBP due to her husband's potential loss of employment. This inquiry prompted a review by defendant, which concluded plaintiff was ineligible for benefits because she had a break in service as a result of exercising her right to contractual child-rearing leave during the 2013-14 school year. Plaintiff filed a Chancery Division complaint alleging violation of her contractual rights to health benefits, and a second count asserting defendant was estopped and equitably estopped from denying benefits for failing to apprise plaintiff she was ineligible for benefits before the leave and continuing to pay her the opt-out waiver payments during her leave. Defendant counterclaimed for reimbursement of $12,500, the total amount of

the opt-out waiver payments it claimed it erroneously paid plaintiff from the 2014-15 through 2016-17 school years.

Plaintiff and defendant each filed a motion for summary judgment. Judge DeLuca aptly summarized the issue as follows: "[Defendant contends] that the childrearing leave of absence taken by [p]laintiff after the birth of her child in 2013 constitutes a break in service, which precludes [p]laintiff's assertion that she is 'grandfathered'[1] under N.J.S.A. 52:14-17.46.1 . . . ."

As the judge explained, the SEHBP, N.J.S.A. 52:14-17.25 to -46.12, "was enacted . . . to provide health insurance coverage to qualified . . . local government employees." Pursuant to the statute, an employee was defined as a person working at least twenty hours per week. N.J.S.A. 52:14-17.46(d)(1) and 52:14-17.26(c)(1). Effective May 21, 2010, the statute was amended to define an employee as a person who worked at least twenty-five hours per week. N.J.S.A. 52:14-17.46.2(d)(2). However, pursuant to N.J.S.A. 52:14-17.46.2(d)(2), the Legislature defined "employee" as "a person employed in a full-time capacity by an employer who has or is eligible for health benefits

---

[1] Although we recognize plaintiff did not intend to do so, we decline to utilize this term because of its prejudiced origins. See Webster's Third New International Dictionary 987 (2002) (definition of "grandfather clause"); Benno C. Schmidt, Jr., Principle and Prejudice: The Supreme Court and Race in the Progressive Era, 82 Colum. L. Rev. 835 (1982).

 A-3021-18T2

coverage . . . on [May 20, 2010] and continuously thereafter" even if they worked less than twenty-five hours per week.

The parties disputed whether plaintiff was "continuously" employed. Defendant argued plaintiff's unpaid leave of absence in 2013-14 constituted a break in service rendering her ineligible for health insurance benefits. Defendant pointed to N.J.S.A. 52:14-17.32(a), entitled "Health benefits of retirees", which states:

> The health care benefits coverage of any employee . . . shall cease upon the discontinuance of . . . employment or upon cessation of active full-time employment subject to such regulations as may be prescribed by the commission for limited continuance of coverage during . . . leave of absence . . . .

Plaintiff argued she was an employee as defined by the statute, and by virtue of having been deemed eligible pursuant to N.J.S.A. 52:14-17.46.2(d)(1), she did not have a break in service by exercising her right to contractual leave during the 2013-14 school year. Plaintiff pointed to N.J.S.A. 52:14-17.32(g), which provides:

> Notwithstanding any other provisions of P.L.1961, c 49 (C.52:14-17.25 et seq.) to the contrary, the health care benefits of any employee of an employer with at least three years of service under a permanent appointment with that employer . . . may be continued and the premiums for the coverage may be paid by the employer during any approved leave of absence of the

6

employee with or without pay, for a period of up to two years.

Judge DeLuca concluded "[t]he [a]greement specifically provided that upon [plaintiff's] return she would receive all benefits to which she was entitled. [Defendant's] minutes makes clear that her leave of absence began on approximately January 10, 2013[,] and she was returning to a full-time position . . . effective September 1, 2014." He rejected defendant's reliance on N.J.S.A. 52:14-17.32(a) because

> N.J.S.A. 52:14-17.32(g), by its terms, allows for the continuation of health care benefits to any school employee with at least three years of service. Health benefits may be available, with or without pay, for up to two . . . years under N.J.S.A. 52:14-17.32(g). Additionally, . . . [d]efendant's own actions in recommencing the cash opt-out waiver payments indicates an acknowledgment by [d]efendant that [p]laintiff remained eligible for health benefits.
>
> An employee on leave of absence remains an employee. Kletzkin v. Bd. of Educ., 136 N.J. 275 (1994).

We "review the trial court's grant of summary judgment de novo under the same standard as the trial court." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). Summary judgment must be granted if the court determines "there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a

matter of law." R. 4:46-2(c). The court must "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995).

Defendant raises the following arguments on appeal: (1) the judge erred because he disregarded the termination provision in the agreement and instead relied on the extension provision to find plaintiff was continuously eligible for insurance during her leave; (2) the extension provision is inapplicable because the Association did not bargain for it and past practice whereby teachers on leave purchased COBRA benefits after twelve weeks of leave proves there was no entitlement to benefits during a contractual leave; (3) plaintiff did not receive opt-out waiver payments during her 2013-14 leave, which demonstrates she was not continuously eligible for benefits; (4) plaintiff's right to benefits ended when she ceased full-time employment; (5) the plain language of the agreement does not support the continuation of coverage because it states benefits shall be restored upon the return to service; (6) the judge could not make a better contract for the parties by expanding eligibility in violation of the contractual language;

(7) the restoration of insurance under the agreement was preempted because plaintiff was not continuously eligible since she was not entitled to benefits during the 2013-14 school year; (8) the judge confused eligibility for benefits with employment to conclude plaintiff had no break in service as a basis to continue her benefits; and (9) the judge erred when he denied defendant summary judgment and the right to recoup the opt-out waiver payments made to plaintiff.

Our de novo review convinces us defendant's arguments are unpersuasive and we affirm substantially for the reasons Judge DeLuca expressed. Plaintiff did not cease to be an employee when she went on leave. The agreement clearly provided that an employee who returned following leave would have benefits restored. Defendant's resolution approving plaintiff's leave contemplated her return.

Plaintiff was also eligible for benefits pursuant to the plain language of N.J.S.A. 52:14-17.32(g), and N.J.S.A. 52:14-17.32(a), a provision addressing retiree benefits, did not apply to plaintiff. "In most instances, the best indicator of [legislative] intent is the plain language chosen by the Legislature . . . . [W]hen the language of a statute is clear on its face, the sole function of the courts is to enforce it according to its terms." State v. Frye, 217 N.J. 566,

575 (2014) (citations and internal quotations omitted). N.J.S.A. 52:14-17.32(g) clearly applied to plaintiff whereas N.J.S.A. 52:14-17.32(a) plainly did not.

Plaintiff could not be paid the opt-out waiver payment for the 2013-14 school year because she was on unpaid leave. Finally, defendant did not raise the past practices argument in its summary judgment motion, and we decline to consider it on appeal. Nieder v. Royal Indem. Ins. Co., Inc., 62 N.J. 229, 234 (1973).

For these reasons, summary judgment in plaintiff's favor was appropriate and defendant was not entitled to summary judgment. To the extent we have not addressed an argument defendant raised, it is because it is without sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3021-18T2